IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| FREDDIE FOUNTAIN, #1640115 | § | |
| VS. | § | CIVIL ACTION NO. 6:15cv100 |
| JOHN A. RUPERT, ET. AL. | § | |

## MEMORANDUM OPINION ADOPTING REPORT AND RECOMMENDATION

Plaintiff Freddie Fountain, an inmate of the Texas Department of Criminal Justice proceeding *pro se*, filed this civil rights lawsuit under 28 U.S.C. § 1983, complaining of alleged deprivations of his constitutional rights. This Court ordered the matter be referred to the United States Magistrate Judge.

**I. Fountain's Motion for Injunctive Relief**

Fountain has filed two motions for a preliminary injunction, (Dkt. #134, #145), requesting that this Court order prison officials to eliminate numerous conditions at the prison. Specifically, in his first motion, Fountain complained about meals by noting that his breakfast was nutritionally inadequate because it was without milk, fruit, syrup, butter, and consisted of two pancakes as opposed to three and not enough oatmeal. He asked that the Court direct prison officials to provide better quality food with the proper amount of nutrition.

In his second motion, Fountain asked that the Court order all defendants to (1) eliminate the cockroaches, spiders, and insect infestation inside his cell; (2) provide him with sunlight, meat and drinks with meals, adequate daily nutrition, clean clothing, adequate bedding, clean eating utensils, heat inside the winter, and air inside during the summer; (3) give him access to medical care and treatment for his numerous afflictions; and (4) provide television and reading materials, eight hours of uninterrupted sleep, an adequate sized cell and writing desk, hot water that does not burn, physical therapy, and rehabilitation.

1

**II. The Magistrate Judge's Report**

After a review of the pleadings, the Magistrate Judge issued a Report recommending that the motions for preliminary injunction be denied. Specifically, the Magistrate Judge highlighted that Fountain could not satisfy any of the elements required for a preliminary injunction. The Magistrate Judge further explained that Fountain's motions were a laundry list of complaints about prison conditions without support.

**III. Fountain's Objections**

In his objections, Fountain first asserts that he "objects to each and every finding and conclusion of fact and law therein the Report." He then notes that he will "restate or state herein his argument."

In the first portion of his objections, Fountain presents an access to courts issue. Specifically, he contends that TDCJ officers are "cutting open, scrutinizing and screening all of Fountain's outgoing sealed legal mail to all legal recipients." He further asserts that prison officials are not giving him enough paper, which has "forced him to have to use the blank side of his own old letters and pleadings" for many years while he builds his case. Fountain maintains that TDCJ has created a "special rule for Fountain several years ago," which identifies all "used paper" pleadings and exhibits as contraband—resulting in their confiscation.

Moreover, in the latter half of his objections, Fountain highlights only his complaints regarding food and meals. Specifically, he states that he "has not been provided with nutritionally complete and wholesome food of sufficient quality or quantity in his seven years of confinement at the Coffield Unit, in either of his two diets." Fountain explains that medical staff have placed him in a high-caloric diet because of his weight loss, which he attributes to his thyroid issues. He also states that Texas law requires that prisoners be "fed good," and that prison officials are refusing to follow that law by refusing to provide enough calories—even though the "cook worksheets" denote enough

protein and calories within each meal. He also alleges that segregated inmates are not provided condiments, such as butter, ketchup, mayonnaise, relish, or BBQ sauce. Fountain repeatedly complains that, despite being placed on a high-caloric diet, the peanut butter in his sandwich are "cut" with water such that it erodes all of the protein. Similarly, the cheese sandwiches only have one piece of cheese when the sandwich is supposed to have two slices.

Finally, Fountain argues that the prison food is "repetitive," which is in direct conflict with Texas law that provides that prisoners are to be fed a "reasonable variety." He explains that "it is cruel and inhumane to force any human being to have to eat the same thing over and over every day to the point that he becomes sick to it." He highlights that during breakfast, inmates are fed the "same apple sauce, grits and oatmeal," while during lunch and dinner, inmates "are repeatedly given the same [vegetables] over and over—e.g., collard greens, green beans, squash, [and] yams."

**IV. Discussion and Analysis**

*A. Issues not Raised in Initial Motion*

As an initial matter, generally, an issue raised for the first time in an objection to a Magistrate Judge's Report is not properly before the District Court. *See Place v. Thomas*, 61 Fed.App'x 120, 2003 WL 342287, *1 (5th Cir. 2003); *United States v. Armstrong*, 951 F.2d 626, 630 (5th Cir. 1992). Moreover, and importantly, a party objecting to a Magistrate Judge's Report must specifically identify those findings to which he or she objects. Frivolous, conclusory, or general objections need not be considered by the District Court. *See Nettles v. Wainwright*, 677 F.2d 404, 410 n.8 (5th Cir. 1982) (*en banc*), *overruled on other grounds by Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (*en banc*).

Here, Fountain never raised his claims concerning his "used paper" or his legal mail within either of his motions for preliminary injunction. He raises them for the first time in his objections to the Report. Consequently, those claims are not properly before the Court, and the Court will not

3

address them. Moreover, his statement that he "objects to each and every finding" is wholly insufficient.

   B. *Preliminary Injunctions*

Turning to his remaining objections concerning prison meals, a party seeking a preliminary injunction must establish four elements: (1) that there is a substantial likelihood the party will prevail on the merits; (2) that a substantial threat exists that irreparable harm will result if the injunction is not granted; (3) that the threatened injury outweighs the threatened harm to the defendants; and (4) that the granting of the preliminary injunction will not disserve the public interest. *See Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279, 288 (5th Cir. 2012). Relief should only be granted if the party seeking relief has clearly carried the burden of persuasion as to all four elements. *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 335 F.3d 357, 363 (5th Cir. 2003).

The equitable injunctive power of federal courts will not be exercised save in exceptional cases to prevent irreparable injury which is clear and imminent. *See Heath v. City of New Orleans*, 320 F.Supp. 545, 546 (E.D.La. 1970), *aff'd* 435 F.2d 1307 (5th Cir. 1971). "Irreparable harm" means an injury which cannot be adequately addressed by a monetary award." *Spiegel v. City of Houston*, 636 F.2d 997, 1001 (5th Cir. 1981). Mere speculation or conclusory allegations of an irreparable injury is insufficient. *Daniels Health Sciences, L.L.C. v. Vascular Health Sciences, L.L.C.*, 710 F.3d 579, 585 (5th Cir. 2013).

However, in *Jones v. Texas Department of Criminal Justice*, 880 F.3d 756, 759 (5th Cir. 2018), plaintiff Jones—a diabetic TDCJ prisoner—alleged that he was on a special diet for his diabetes, but this diet was discontinued during lockdowns despite repeated complaints. Jones maintained that his blood sugar rose above 500, considerably above normal, and he suffered a heart attack during one of the lockdowns.

4

Jones sought injunctive relief, which was denied by the district court. On appeal the Fifth Circuit stated that in order to establish a likelihood of success on the merits of his Eighth Amendment claim, Jones would have to show a likelihood that substituting high-sugar meals for his prescribed diet amounted to deliberate indifference to his serious medical needs. Jones's allegations were specific, concrete, and direct. Under the facts presented, the Fifth Circuit determined that Jones's pleadings alleged a pattern of knowing interference with the prescribed care for his diabetes, despite multiple complaints including an official grievance. These claims, the Fifth Circuit found, were adequate to state a claim for deliberate indifference to his serious medical needs, thereby giving Jones a sufficient likelihood of success on the merits.

The Fifth Circuit also determined that Jones's allegations were sufficient to show a substantial threat of irreparable harm and that the District Court could not simply assume that providing necessary medical care to a prisoner would be too much of an inconvenience to prison authorities. Therefore, the Fifth Circuit reversed the court's denial of his motion for injunctive relief—remanding the case for further proceedings.

Here, the Magistrate Judge correctly and properly denied Fountain's motions for a preliminary injunction. First and foremost, throughout his objections and motions, Fountain explains that he has been provided inadequate food lacking nutrition for seven years. Accepting that as true, which the Court is required to do, any irreparable injury stemming from the lack of nutrition is clearly not imminent. Unlike Jones, who needed the injunction because of the immediacy of his diabetic needs during a lockdown, Fountain admits that his circumstances have been ongoing for at least seven years. Therefore, given the lack of immediacy here, Fountain fails to show that a substantial threat of irreparable harm exists if the injunction is not granted. The Magistrate Judge correctly denied the motions.

Furthermore, Fountain's complaints about the lack of condiments during meals affords absolutely no basis for injunctive relief. As the Magistrate Judge properly highlighted, the Constitution requires inmates to be provided with well-balanced meals, consisting of sufficient nutritional value to preserve life. *See Green v. Ferrell*, 801 F.2d 765, 770-71 (5th Cir. 1981); *see also U.S. v. State of Mich.*, 680 F.Supp. 270, 275 (W.D.Mich. Mar. 3, 1988) ("Where food is prepared and served in a sanitary manner and is nutritionally adequate to maintain normal health, the fact that it is unappetizing will not, standing alone, state a constitutional claim.").

Whether prison meals are constitutional is not measured by its variety or gastronomic appeal; in other words, contrary to Fountain's contentions, there is no constitutional right to condiments or a variety of food selections mirroring a restaurant. *See, e.g., Jones v. Diamond*, 636 F.2d 1364, 1378 (5th Cir. 1981) (holding that a diet consisting "mainly of starch and carbohydrates with few vegetables and fruits," while "likely dull," is not constitutionally inadequate.); *see also Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985) ("The Constitution requires that prisoners be provided 'reasonably adequate food' . . . . The fact that the food occasionally contains foreign objects or sometimes is served cold, while unpleasant does not amount to a constitutional deprivation.") (citation omitted). Accordingly, Fountain's complaints about the lack of variety and condiments with his prison meals do not demonstrate a constitutional deprivation.

Finally, within his objections, Fountain repeatedly highlights how, at the Coffield Unit, food service staff prepares "cook work sheets", which "show exactly what food items and what ounces are provided with each meal." Moreover, according to Fountain, TDCJ policies require meals to contain a certain amount of calories; however, as he states, TDCJ officials do not follow their policies or the "cook work sheets" when providing the meals to the prisoners. Fountain essentially requests that the Court order TDCJ to follow its own policies. However, as the Magistrate Judge correctly explained in the Report, a general injunction ordering a defendant to obey the law, is not permitted. *See S.E.C.*

6

*v. Life Partners, Inc.*, 854 F.3d 765, 784 (5th Cir. 2017). Moreover, TDCJ's failure to follow its own policies or procedures is not a constitutional violation, if constitutional minima are nevertheless met. *See Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996). Accordingly, Fountains insistence regarding how TDCJ's cook sheets at the Coffield Unit denote certain menu items/calories, but may not actually follow those sheets, is not a constitutional deprivation. The Magistrate Judge properly denied Fountains motions.

As the Magistrate Judge found, Fountain has not demonstrated that a substantial threat exists that irreparable harm will result if the injunction is not granted. He states that the circumstances surrounding his meals, on both of the diets he receives, have been ongoing for at least seven years. Moreover, his claims regarding his legal mail and "used paper" were not raised in his motions, rendering those claims not properly before the Court.

The Court has conducted a careful *de novo* review of those portions of the Magistrate Judge's proposed findings and recommendations to which Plaintiff objected. *See* 28 U.S.C. §636(b)(1) (District Judge shall "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."). Upon such *de novo* review, the Court has determined that the Report of the United States Magistrate Judge is correct and the Plaintiff's objections are without merit. Accordingly, it is

**ORDERED** that Plaintiff's objections, (Dkt. #158), are overruled and the Report of the Magistrate Judge is **ADOPTED**. Additionally, it is

**ORDERED** that Plaintiff's motions for a preliminary injunction, (Dkt. #135, #145) are **DENIED**.

So **ORDERED** and **SIGNED** this **1** day of **March, 2018.**

_____
Ron Clark, United States District Judge